**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JOSE ARCE and DANIEL JACKSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,

Defendant.

Civil Action No.: 1:26-cv-10127

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Jose Arce ("Arce") and Daniel Jackson ("Jackson"; collectively with Arce, "Plaintiffs"), by their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge. This action is brought against Defendant Allstate Property and Casualty Insurance, Company ("Allstate" or "Defendant").

## NATURE OF ACTION

1. Plaintiffs are drivers who have auto insurance through companies other than Allstate. They were each in a car accident with a driver who was insured by Allstate. Because these accidents were the fault of the other drivers, the Allstate policies covered the expenses related to the accident. For example, Allstate paid for and arranged the necessary repairs for each Plaintiff's car.

2. Allstate also informed the Plaintiffs that it would pay for their rental cars while their own cars were being repaired. Allstate arranged the rental car reservations through its preferred vendor, Enterprise.[1] When each Plaintiff arrived at a local Enterprise car rental location, the reservation was ready for them, as Allstate had represented. Neither Plaintiff requested any adjustments to the reservation that Allstate made and both accepted a vehicle initially offered by Enterprise pursuant to Allstate's reservation. Both Plaintiffs relied on Allstate's promise that it would arrange the reservations and pay the Plaintiffs' expenses for the rental cars.

3. Each Plaintiff used their rental car until their own cars were available again. However, when the Plaintiffs submitted their expenses to Allstate, Allstate refused to pay for the full cost of the rental car. Specifically, Allstate refused to reimburse Plaintiff Arce $85.22 and Plaintiff Jackson $92.38 for their rental period, notwithstanding its earlier promises.

4. Plaintiffs bring this action individually and on behalf of a "Class" of all drivers who Allstate informed it would pay for rental car reimbursement but failed to reimburse the full rate of the agreement arranged by Allstate, as defined more fully below. Plaintiffs bring claims alleging breach of the implied duty of good faith and fair dealing in the relevant contract on a nationwide basis; alternatively, for promissory estoppel on a nationwide basis; and the consumer protection laws of their states on behalf of consumers in New York and Alabama, such as New York GBL § 349, and the Alabama Deceptive Trade Practices Act § 8-19-5.

---

[1] "Enterprise" refers to Enterprise Holdings, Inc. and its subsidiaries, which does business as Enterprise Renta-A-Car and other brands.

## PARTIES

5. Plaintiff Arce is, and at all times relevant to this action has been, a resident and citizen of the State of New York.

6. Plaintiff Jackson is, and at all times relevant to this action has been, a resident and citizen of the State of Alabama.

7. Defendant Allstate is an insurance company incorporated under the laws of the State of Illinois with its principal place of business and headquarters in Northbrook, Illinois. [2] Allstate (and its affiliated companies) constitutes one of the largest automobile insurance companies in the country. According to the Form 10-K publicly filed by The Allstate Corporation with the Securities and Exchange Commission ("SEC") for the fiscal year ending December 31, 2025, at page 40, Allstate-related companies had more than 25.5 million automobile policies in force and collected more than $38 billion in premiums for these policies in 2025. The Allstate brand's slogan is "You're in good hands with Allstate."

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from at least one defendant.

[2] Defendant is one of several companies that are subsidiaries of the Allstate Insurance Company, which in turn is part of the holding company known as The Allstate Corporation. Defendant is the entity that corresponded with Plaintiffs. Upon discovery, Plaintiffs reserve the right to bring claims against additional Allstate affiliates, including any specific additional entities who underwrote the insurance policies at issue.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because this is the District in which a substantial part of the events giving rise to the claims asserted occurred and Defendant Allstate is headquartered in this District.

## FACTUAL ALLEGATIONS

10. Plaintiffs Arce and Jackson each have private vehicles that were insured by insurance companies other than Allstate.

### Plaintiff Arce's Experience

11. On September 5, 2025, Plaintiff Arce was in a motor vehicle accident with an Allstate insured driver involving Arce's Tesla Model 3 sedan in New Rochelle, New York (the "Arce Accident").

12. The other driver was determined to be 100% at fault for the Arce Accident.

13. An Allstate representative informed Mr. Arce that Allstate would provide rental car reimbursement while his own car was undergoing repairs.

14. Mr. Arce received a letter dated September 26, 2025, from Allstate, which said that Allstate would provide "coverage for property damage, including loss of use of the damaged property and any other out-of-pocket expenses reasonably attributable to the accident and our insured's negligence."

15. The Allstate representative directed Mr. Arce to rent a car through its partner, Enterprise, and represented that Allstate would arrange the reservation. Mr. Arce went to a nearby Enterprise location in Mamaroneck, New York and provided his Allstate claim number.

16. The Enterprise representative found Mr. Arce's reservation and gave him the choice of two available vehicles. Mr. Arce selected the smaller of the two vehicles offered.

17. Mr. Arce did not request to change the category or "class" of vehicle on the reservation.

18. Mr. Arce rented a 2025 Mazda CX-5, which Enterprise classifies as a "Midsize SUV." Throughout the rental and automotive industry, the terms "Midsize SUV" and "Intermediate SUV" are used interchangeably.

19. Prior to renting the car, Mr. Arce does not recall receiving any notification in writing or otherwise that the rental would be limited to a particular class of rental vehicles, including "intermediate" class vehicles, or to $27.75 plus tax per day.

20. Mr. Arce rented the car for a period of eight rental days between October 1 and 8 while Allstate oversaw the repairs to his personal car.

21. Enterprise charged him $352.46. This consisted of a rate of $36.60 per day plus applicable taxes.

22. The Enterprise Rental Agreement Summary provided to Mr. Arce referred to "ALLSTATE INS-EXPRESS RENTALS." Similarly, the Enterprise Summary of Charges indicated that the "RATE SOURCE ACCOUNT" was also "ALLSTATE INS-EXPRESS RENTALS," indicating that this was the rate that Allstate and Enterprise agreed to.

23. The price that Enterprise charged Mr. Arce in accordance with the agreement between Allstate and Enterprise was a reasonable or prevailing market rate for the vehicle he was provided. While rental vehicle prices vary based on different factors, they are often higher than $36.60 per day for similar vehicles. For example, according to the Enterprise website, the same Enterprise location currently has many vehicles available for more than $550 for the period from August 22 to August 29, 2026 (as compared to the $352.46 charged to Mr. Arce for the same number of days and with a similar reservation lead time). No rental vehicles are available for

less than $510 for this period, and a "Midsize SUV" comparable to Mr. Arce's rental vehicle currently costs $631.96. [3]




24. Other car rental companies offer similar prices that are also higher than the daily and total rates charged to Mr. Arce. For example, a search on Expedia for the period of August 22 through August 29, 2026, in the same town showed results above $36 per day and $400 in total price:

---

[3] Because the rental period exceeded one week, the "Total" price in this example is greater than the "Per Week" price.




25. The vehicle that Mr. Arce received was a reasonable replacement for his personal vehicle. For example, Enterprise considers a Tesla Model 3 to be "Fullsize Elite Electric Sedan Car Class." https://www.enterprise.com/en/exotic-car-rental/vehicles/fullsize-elite-electric-sedan/tesla-model-3.html, archived at https://perma.cc/2T9V-R32L. Mr. Arce received a standard "Midsize SUV," as opposed to the more expensive "Midsize Luxury SUV" or "Midsize Elite Luxury SUV."

26. On October 10, 2025, Allstate authorized the reimbursement of only $267.24 for the rental car. Allstate did not reimburse Mr. Arce for the other $85.22 that he spent on the rental.

27. Starting on October 20, 2025, Mr. Arce wrote to Allstate several times to contest the underpayment. He also asked for compensation for other issues, including the additional cost for gas that he incurred using a gas motor car instead of his damaged electric Tesla.

28. Allstate eventually reimbursed him for the additional cost of gas but not the remaining $85.22 for the rental car.

29. Mr. Arce subsequently filed a complaint with the New York Attorney General's Office and the New York Department of Financial Services.

30. Allstate responded to the complaint to the New York Attorney General's Office on or around October 30, 2025, stating that "Allstate agreed to address an intermediate sized vehicle with a daily rate of $27.75 plus tax." Allstate argued that "Mr. Arce elected to obtain a larger vehicle."

31. Allstate also confirmed that it sent the reservation information to Enterprise, and attached what appears to be a screenshot of a reservation sent directly to Enterprise and not Mr. Arce. The reservation information attached by Allstate lists the file "Owner" and "Manager" as "ALLSTATE, ESCALATED RNTLS." The document does not appear to indicate a class of vehicle.

32. The Enterprise website does not offer a clearly defined "intermediate" class of gasoline powered cars. https://www.enterprise.com/en/rental-cars/us/cars.html, archived at https://perma.cc/HSV7-5QA7. The website identifies at least 35 different classes of rental cars, including "compact," "standard," "midsize," and "fullsize"; however, "intermediate electric" is the only class with "intermediate" in the title. Moreover, both of the vehicles offered to Mr. Arce by Enterprise pursuant to the reservation arranged by Allstate were SUVs, not cars.

33. Because a reasonable price at a prevailing market rate was also available at other rental car companies, Mr. Arce would have been better off renting a car from a company who was not Allstate's preferred vendor if Allstate would reimburse the full price of his rental.

**Plaintiff Jackson's Experience**

34. On April 29, 2026, Plaintiff Jackson was in a motor vehicle accident with an Allstate insured driver involving his Toyota Prius in Alabama (the "Jackson Accident").

35. The other driver was determined to be 100% at fault for the Jackson Accident.

36. On or about May 1, 2026, Allstate sent Plaintiff Jackson a letter outlining its "rental guidelines." Specifically, the letter stated:

> We'll consider a daily vehicle rental reimbursement rate up to $ [28.31] per day for a(an) [intermediate] vehicle from our preferred vendor, Enterprise Rent-A-Car. ***If you rent from another rental vendor, we will pay for the same car class listed above at the prevailing market rate***.

[Brackets in original; emphasis added.] A reasonable consumer would understand that Allstate would reimburse a driver at least $28.31 or a prevailing market rate. This language steers drivers such as Plaintiff Jackson to rent a car from the preferred vendor, Enterprise, instead of a different car rental company where Allstate might be responsible for a higher daily rate.

37. Mr. Jackson went to a nearby Enterprise location and provided the reservation number that Allstate gave him.

38. The Enterprise representative found Mr. Jackson's reservation. Mr. Jackson was not presented with a choice of vehicles. Mr. Jackson rented the car that was available under the reservation made by Allstate. Mr. Jackson was given a Nissan Altima.

39. Mr. Jackson did not request to change the category or "class" of vehicle on the reservation.

40. Mr. Jackson rented the car for a period of 24 rental days between May 4 and May 28 while Allstate oversaw the repairs to his personal car.

41. Enterprise charged him $824.73. This consisted of a rate of $32.04 per day plus applicable taxes and fees.

42. The Enterprise Rental Agreement provided to Mr. Jackson said that the "Contract" was "ALLSTATE INS-EXPRESS RENTALS." Similarly, a statement that Mr. Jackson received during the rental period listed "Bill-To-N" and "COMPANY ALLSTATE INS-EXPRESS RENTALS," and provided a reference number. This suggests that this was the rate that Allstate and Enterprise agreed to.

43. The price that Enterprise charged Plaintiff Jackson in accordance with the agreement between Allstate and Enterprise was a reasonable or prevailing market rate for the vehicle he was provided. While rental vehicle prices vary based on different factors, they are often higher than $32.04 per day for similar vehicles. For example, according to the Enterprise website, the local Enterprise location currently has many vehicles available for more than $1,200 in total for the period from August 22 to September 14, 2026 (as compared to the $824.73 charged to Mr. Jackson for the same number of rental days and with a similar reservation lead time). No rental vehicles are available for less than $1,160 for this period, and a Nissan Altima identical to Mr. Arce's rental vehicle currently costs $1,264.90.:




44. Other car rental companies offer similar prices that are higher than the rates charged to Mr. Jackson. For example, a search on Expedia for the period of August 22 through September 14, 2026, in the same town showed results above $879 for the total number of rental days:




45. In a letter dated June 1, 2026, Allstate informed Mr. Jackson that it would only reimburse him $732.35 for the cost of renting the car and would not compensate him for the total cost incurred. The letter said:

> We've provided compensation at a rate of $28.31 per day. After reviewing the cost of the vehicle you rented, we've determined that it exceeds the reasonable amount we would typically pay for the loss of use of the damaged vehicle.

46. The letter also stated:

> If you believe the compensation for the loss of use of the damaged vehicle is insufficient, please share any information that supports your request for additional compensation. We'll review it and get back to you promptly to discuss it further.

47. Shortly after receiving this notice, Mr. Jackson contacted Allstate by phone and email to contest the amount that Allstate reimbursed him.

48. For example, Mr. Jackson explained his side of the story in an email to Allstate on June 16, 2026:

> Based on your response, it sounds like you are not committing to cover the full reimbursement for the reservation that your company made on my behalf at [E]nterprise. You stated an amount that I agreed to. As was previously stated in my correspondence, I happily agreed because you and your representative set my reservation at the car rental location. It was never an understanding of mine that your company might establish a car reservation on my behalf at any rate other than what we agreed to. That really should have been disclosed or you should have had me make the direct reservation. As is, your company made the reservation and I accepted the car that they pulled around once I supplied the reservation number that you gave to me.

49. Allstate did not provide an explanation.

50. As stated in Paragraph 32, above, the Enterprise website does not list an "intermediate" class of gasoline powered cars.

51. The vehicle that Mr. Jackson received was a reasonable replacement for his personal vehicle.

52. Allstate has not compensated Mr. Jackson for the $92.38 difference in the cost of rental car.

## CLASS ACTION ALLEGATIONS

53. This action is brought by Plaintiffs, for themselves and on behalf of all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

54. Plaintiffs seek to represent a class of all persons who did not have automobile insurance with Allstate and were in an automobile accident where Allstate provided these persons with a rental car reimbursement for a car rented with their preferred vendor, such as Enterprise, within the applicable statute of limitations, while repairs were made to their own car, and did not reimburse the drivers for the full price charged (the "Class").

55. Plaintiff Arce also seeks to represent a subclass of all persons who reside in New York; did not have automobile insurance with Allstate; and were in an automobile accident where Allstate provided these persons with a rental car reimbursement for a car rented with their

preferred vendor, such as Enterprise, within the applicable statute of limitations, while repairs were made to their own car, and did not reimburse the drivers for the full price charged (the "New York Subclass").

56. Plaintiff Jackson also seeks to represent a subclass of all persons who reside in Alabama; did not have automobile insurance with Allstate; and were in an automobile accident where Allstate provided these persons with a rental car reimbursement for a car rented with their preferred vendor, such as Enterprise, within the applicable statute of limitations, while repairs were made to their own car, and did not reimburse the drivers for the full price charged (the "Alabama Subclass"; collectively with the New York Subclass, the "Subclasses").

57. Excluded from this Class and each Subclass are Defendant and its officers, directors, and employees, as well as Defendant's affiliates, parents, and subsidiaries and their respective officers, directors, and employees.

58. **Numerosity**. The members of the Class and each Subclass are so numerous and dispersed that it would be impracticable to join them individually. Plaintiffs believe there are, at minimum, thousands of members of the Class and each Subclass. Defendants' records contain sufficient information to determine the exact number of persons in the Class and each Subclass.

59. **Commonality**. Common questions of law and fact exist as to all members of the Class and Subclasses and predominate over any questions affecting solely individual members of the Class and Subclasses. Among the questions of law and fact common to Class and Subclasses are:

a. Whether Defendant omitted material facts or made misleading representations concerning the provision of reasonable or prevailing market rate rental car reimbursement;

b. Whether Defendants' representations and the reliance assumed by Plaintiffs and the Class constituted an enforceable promise;

c. Whether Defendant's wrongful conduct caused Plaintiffs and the Class and Subclass members' damages;

d. The methodology for determining the amount of damages suffered by Plaintiffs and Class and Subclass members; and

e. Whether the Plaintiffs and Class and Subclass members are entitled to a reasonable award of attorneys' fees, interest and costs of suit and treble damages, and, if so, the amounts owed.

60. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class and Subclasses they represent because they all were informed that Allstate would pay for a reasonable or prevailing market rate rental car expense, Allstate arranged the reservation for the rental car, and then Allstate refused to reimburse Plaintiffs and others for the full expense of the rental cars.

61. **Adequacy of Representation**. Plaintiffs will adequately represent and protect the interests of the Class and Subclasses and have no interests that conflict with or are antagonistic to the interests of Class or Subclass members. Plaintiffs have retained attorneys who are experienced and capable of prosecuting class actions and complex litigation. Plaintiffs' attorneys will actively conduct and be responsible for prosecuting this litigation, and have adequate resources, experience and commitment to litigate this matter.

62. **Superiority**. A class action is superior to any other method available for the fair and efficient adjudication of this controversy because it would be impractical and unduly burdensome for each of the individual Class and Subclass members to bring a separate action.

Moreover, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

63. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class and Subclasses, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class and Subclasses will prosecute separate actions is remote due to the limited damages per member and the time, expense, and risk associated with such litigation.

64. Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted on grounds that apply generally to the Class, so that the final equitable relief that Plaintiffs seek here is appropriate with respect to the Class as a whole.

65. Class certification is also appropriate because there is a readily identifiable class on whose behalf this action can be prosecuted. Class and Subclass members are readily ascertainable from Defendant's records, especially since Allstate has already committed to providing them rental car benefits. A notice of pendency or resolution of this class action can be provided to Class and Subclass members by direct mail, email, publication notice, or other similar means.

## FIRST CAUSE OF ACTION

Breach of the Implied Covenant of Good Faith and Fair Dealing
On Behalf of the Class

66. Plaintiffs hereby incorporate by reference all factual allegations made in the previous paragraphs 1 through 65.

67. Defendant formed a contract, either explicit or implied in law and fact, to provide a rental car for Plaintiffs and the Class members while their damaged car was being repaired, which Plaintiffs and the Class members accepted. The contract included that Defendant would reimburse out-of-pocket expenses reasonably attributed to the accident and the insured's negligence.

68. A covenant of good faith and fair dealing is implied by law in these contracts. Defendant must exercise its contractual discretion honestly and in good faith.

69. In reliance on Defendant's representations, Plaintiffs and the Class reasonably expected that the price that Allstate said it would reimburse would be consistent with the rate Allstate negotiated with its preferred vendor, such as Enterprise.

70. Defendant Allstate breached the covenant of good faith and fair dealing when it established a reservation at a price that was higher than what it would reimburse, and refused to pay the full amount of the rental cars that it had arranged and negotiated with its preferred vendor, such as Enterprise. Defendant's conduct is dishonest and unfair because, among other things, it set the terms of the rental agreement , did not disclose that it would not pay the rates that it negotiated nor otherwise clearly communicate the rates and terms to Plaintiffs, and failed to reimburse Plaintiffs and the Class members the reasonable and/or prevailing market rental rate. Because Allstate arranged the rental with Enterprise, it was Allstate's responsibility to pay for the car actually provided by Enterprise.

71. Defendant's breach damaged Plaintiffs and members of the putative Class.

## SECOND CAUSE OF ACTION

Promissory Estoppel
On Behalf of the Class

72. Plaintiffs hereby incorporate by reference all factual allegations made in the previous paragraphs 1 through 65.

73. This cause of action is pled in the alternative to the first cause of action.

74. Defendant promised that it would reimburse the reasonable or prevailing market price for a rental car that it arranged with its preferred vendor, such as Enterprise.

75. Allstate reasonably expected that Plaintiffs and the Class members would take action as a result of this promise.

76. In reliance on Defendant's statements as alleged herein, Plaintiffs and Class members took action by renting a car from Allstate's preferred vendor, such as Enterprise, under the terms that Allstate arranged with its preferred vendor.

77. Defendant Allstate instructed Class members to rent a car from Enterprise and Allstate arranged the reservation details. Class members are presumed to have relied on Defendant's conduct since Allstate told Plaintiffs that it would reimburse them for rental cars at the preferred vendor, and they proceeded to rent a car at the preferred vendor using reservation information provided by Allstate and under the Allstate terms (as reflected in the rental agreement).

78. Plaintiffs and the Class members were damaged in the amount of the unreimbursed rental expense.

79. Injustice can be avoided only by enforcing Defendant's promise.

## THIRD CAUSE OF ACTION

New York Gen. Bus. Law § 349
On Behalf of the New York Subclass

80. Plaintiffs hereby incorporate by reference all factual allegations made in the previous paragraphs 1 through 65.

81. Plaintiff Arce brings this Count individually and on behalf of the members of the New York Subclass.

82. New York Gen. Bus. Law § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

83. By the acts and conducted alleged herein, Defendant committed unfair or deceptive acts and practices. These acts and conduct include Defendant's misrepresentations that it would cover the reasonable or prevailing market costs of a rental car. This is a deceptive act and unfair practice because Defendant did not reimburse Plaintiff and the New York Subclass members the full rate that it had negotiated with Enterprise.

84. The foregoing deceptive acts and practices were directed at consumers.

85. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and benefits of the agreement to reimburse rental car rates.

86. Plaintiff Arce and members of the New York Class were injured because, among other things: (a) they would not have accepted the offer to reimburse Plaintiff for the rental reservation at Allstate's preferred vendor; (b) would have made sure that Allstate pre-approved the rate; and/or (c) would have rented a car from another provider at a reasonable or prevailing market rate to ensure reimbursement from Allstate. As a result, Plaintiff Arce and the New York

Subclass were damaged by the amount of money that they had to pay out-of-pocket since it was not reimbursed by Defendant Allstate.

87. As a result of Defendants' false, misleading, and deceptive statements and, including but not limited to, the misrepresentations of fact described herein, Plaintiff Arce and the members of the New York Subclass have suffered and continue to suffer economic injury.

88. On behalf of himself and other members of the New York Subclass, Plaintiff Arce also seeks to enjoin the unlawful acts and practices described herein, to recover the greater of actual damages or fifty dollars, three times actual damages, and reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

Breach of Alabama Deceptive Trade Practices Act § 8-19-5
On Behalf of the Alabama Subclass

89. Plaintiffs hereby incorporate by reference all factual allegations made in the previous paragraphs 1 through 65.

90. Plaintiff Jackson brings this Count individually and on behalf of the members of the Alabama Subclass.

91. The Alabama Deceptive Trade Practices Act § 8-19-5(27) prohibits "unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce."

92. By the acts and conducted alleged herein, Defendant committed unfair or deceptive acts and practices. These acts and practices include Defendants' misrepresentations that it would cover the reasonable or prevailing rate costs of a rental car. This is a deceptive act and unfair practice because Defendant did not reimburse Plaintiff Jackson and the Alabama Subclass members the full rate that it had negotiated with Enterprise.

93. The foregoing deceptive acts and practices were directed at consumers.

94. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and benefits of the agreement to reimburse rental car rates.

95. Plaintiff Jackson and members of the Alabama Subclass were injured because: (a) they would not have accepted the offer to reimburse Plaintiff for the rental reservation at Allstate's preferred vendor; (b) would have made sure that Allstate pre-approved the rate; and/or (c) would have rented a car from another provider at a reasonable or prevailing market rate to ensure reimbursement from Allstate. As a result, Plaintiff Jackson and the Alabama Subclass were damaged by the amount of money that they paid out-of-pocket that was not reimbursed by Defendant Allstate.

96. As a result of Defendant's false, misleading, and deceptive statements and misrepresentations of fact, including but not limited to the misrepresentations described herein, Plaintiff Jackson and the members of the Alabama Subclass have suffered and continue to suffer economic injury.

97. On behalf of himself and other members of the Alabama Subclass, Plaintiff Jackson also seeks to enjoin the unlawful acts and practices described herein, to recover the greater of actual damages or one hundred dollars, three times actual damages, and reasonable attorneys' fees.

98. On August 4, 2026, Plaintiff Jackson mailed a written demand for relief to Defendant Allstate pursuant to the Alabama Deceptive Trade Practices Act. Defendant responded via email on August 11, 2026, and declined to make a written tender of settlement. In compliance with Alabama Deceptive Trade Practices Act § 8-19-10(e), Plaintiff Jackson communicated his written demand at least 15 days prior to the filing of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following judgment:

A. For an order certifying the Class and Subclasses, appointing Plaintiffs as the representatives of the Class and Subclasses, and designating the undersigned as Class Counsel;

B. For an order declaring that the Defendant's conduct breaches its contract with Plaintiffs and the Class members;

C. Alternatively, for an order declaring that the Defendant's conduct violates the covenant of good faith and fair dealing;

D. For an order declaring that the Defendant's conduct violates N.Y. Gen. Bus. Law § 349;

E. For an order declaring that the Defendant's conduct violates the Alabama Deceptive Trade Practices Act;

F. Awarding compensatory, actual, statutory, and/or treble damages in favor of Plaintiffs and members of the Class and Subclasses for all damages sustained as a result of the Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

G. Awarding Plaintiffs and the Class and Subclasses restitution and/or disgorgement to the extent legal remedies are unavailable or insufficient;

H. Awarding equitable relief against Defendant to prevent it from continuing its ongoing unfair, unconscionable, and/or deceptive acts and practices;

I. Awarding pre-judgment and post-judgment interest;

J. Awarding Plaintiffs and members of the Class and Subclasses their reasonable costs and expenses incurred in this action, including counsel fees, costs, and expert fees; and

K. Awarding such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims so triable in this action

Dated: August 21, 2026

Respectfully submitted,

/s/ Adam T. Savett

Adam T. Savett (73387)
Chet B. Waldman (*pro hac vice* forthcoming)
Matthew Insley-Pruitt (*pro hac vice* forthcoming)
WOLF POPPER LLP
570 Lexington Ave., 19th Floor
New York, NY 10022
Tel: (212) 759-4600
asavett@wolfpopper.com
cwaldman@wolfpopper.com
minsley-pruitt@wolfpopper.com